UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

HEATHER DILWORTH                                               PLAINTIFF

vs.                                                            Civil No. 1:24-CV-219-GHD-DAS

BOA VIDA HOSPITAL OF
ABERDEEN, MS, LLC, d/b/a
MONROE REGIONAL HOSPITAL                       DEFENDANT

**OPINION**

Presently before the Court is Defendant Boa Vida Hospital of Aberdeen, MS, LLC d/b/a Monroe Regional Hospital's ("Defendant") Motion to Dismiss [Doc. No. 6] seeking dismissal of Plaintiff Heather Dilworth's ("Plaintiff") wrongful termination claim. Upon due consideration, the Court finds Defendant's Motion [6] should be denied for the reasons set forth in this opinion.

*I.     Background*

In the weeks prior to June 1, 2024, Plaintiff—a medical laboratory scientist working for Defendant—noticed and complained to her supervisors their lab's troponin analyzer "was not giving accurate results."[1] This machine, which requires calibration every six months, analyzes troponin levels in heart patients: the higher the troponin level, the higher the probability the patient will soon experience a cardiac episode. On June 1, 2024, Plaintiff alleges she "performed a troponin test on a patient who was complaining of chest pain" but "suspected that the low results shown on the analyzer were false." To confirm this theory, Plaintiff sent a sample to a neighboring hospital which confirmed her hypothesis. The neighboring hospital sent the results to Defendant,

---

[1] As required, the Court draws this information from the Complaint [1]. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

1

but Plaintiff had already left work for the day. The patient never received these updated results and did suffer a heart attack "shortly after" his discharge.

This prompted Plaintiff to complain again about the machine's defects to her direct supervisor, Cassie Garth, and the lab manager, Alan Lockhart. Plaintiff alleges Garth responded by falsifying "the data on the machine to make it appear the machine was operating within applicable ranges" and by falsifying "the quality control ranges, so as to make it appear . . . the machine had been within tolerable limits on the day of the test." Plaintiff then took her complaints to Defendant's hospital administrator, Chris Chandler, and Defendant's director of nurses, Amy Joslin, on June 3, 2024, reporting both the faulty machine and Garth's alleged data manipulations. Plaintiff also reported Defendant's continued use of the allegedly faulty troponin analyzer to the Mississippi Department of Health. From this, the U.S. Department of Health and Human Services investigated and released a report on July 11, 2024, substantiating many of Plaintiffs allegations regarding Defendant's failed maintenance of the troponin analyzer [1-1].

That same day, "Defendant notified Plaintiff that she was being placed on paid leave pending investigation." She was ultimately terminated on August 2, 2024. Plaintiff filed this wrongful termination lawsuit on December 19, 2024, alleging "Defendant knowingly and intentionally charged the United States, insurance companies, and individual patients for the use the [troponin analyzer], which it knew would not produce accurate results, and the use of which endangered lives of patients." More specifically, Plaintiff alleges she reported Defendant for violations of the False Claims Act[2] ("FCA"); 42 U.S.C. § 1320a-7b;[3] 18 U.S.C. 1001(a); and Miss. Code Ann. § 97-7-10, which she claims is the reason Defendant terminated her employment.

---

[2] 18 U.S.C. § 287
[3] Plaintiff's Complaint [1] originally listed 42 U.S.C. § 1320(a), but Plaintiff noted in her Response to the Motion to Dismiss [9] this was incorrectly cited. Instead, she intended to cite 42 U.S.C. § 1320a-7b.

2

## *II.    Standard of Review*

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

In other words, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Houston Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

Regarding the heightened standard of Rule 9(b), a plaintiff must allege fraud or mistake

3

"with particularity the circumstances constituting fraud or mistake." The Fifth Circuit has clarified "[p]laintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent'" to survive a motion to dismiss. *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Further, this information must "be laid out *before* access to the discovery process is granted." *Id.* (quoting *Williams*, 112 F.3d at 178) (internal quotation marks omitted) (emphasis in original).

### *III. Analysis and Discussion*

Defendant first argues Plaintiff's claim deserves dismissal because she failed to satisfy the heightened pleading standard of Rule 9(b). This standard, discussed more in detail above, "applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (citing FED. R. CIV. PROC. 9(b)). Again, Plaintiff must show the "who, what, when, where, and how of the fraud or misrepresentation" to overcome Rule 9(b). *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 890 (5th Cir. 2024). This, she accomplished. For the who, Plaintiff lists her supervisors, including Cassie Garth whom she alleges "falsified" the troponin analyzer data results [1]. Regarding the what and how, she alleges Defendant fraudulently charged "the United States, insurance companies, and individual patients for the use of the [malfunctioning troponin analyzer]" [1]. Finally, she provides a time frame in which the alleged fraudulent activities occurred—beginning "several weeks prior to June 1, 2024," until June 11, 2024—along with the location, *i.e.*, the hospital laboratory [1]. This is enough factual material to overcome Rule 9(b)'s heightened pleading standard.

Defendant next argues Plaintiff's claim cannot overcome Rule 12(b)(6). Plaintiff's initial contention is Defendant wrongfully terminated her employment after she reported Defendant's

4

actions to the Mississippi Department of Health in violation of Mississippi's public policy exception to the employment-at-will doctrine established in *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So.2d 603 (Miss. 1993).[4] Mississippi courts have long recognized at-will employment, and the "default rule is that employers may fire employees 'for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.'" *Brandi's Hope Cmty. Serv., LLC v. Walters*, 391 So.3d 162, 166 (quoting *McArn*, 626 So.2d at 606). The Mississippi Supreme Court, however, has established "two narrow public policy exceptions" to this default rule:

> (1) An employee who refuses to participate in an illegal act . . . [, and] (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

*Id.* (quoting *McArn*, 626 So.2d at 607). Plaintiff makes a claim under the second exception requiring she meet three elements: "(1) plaintiff was an employee of the defendant, (2) an illegal act by the employer, (3) plaintiff was terminated because they reported the illegal act of the employer." *Id.* The first element is uncontested; Defendant did employ Plaintiff. The parties, however, highly contest elements two and three.

Beginning with element two, Plaintiff alleges Defendant's illegal conduct was "knowingly and intentionally [charging] the United States, insurance companies, and individual patients for the use of the [troponin analyzer], which it knew would not produce accurate results, and the use of which endangered [patients' lives]" [1]. She goes on to allege her supervisor, Cassie Garth, "falsified the quality control ranges [on the troponin analyzer]" after Plaintiff reported its malfunctioning [1]. Plaintiff cites the False Claims Act; 42 U.S.C. § 1320a-7b; 18 U.S.C. §

---

[4] The Court notes at the outset the *Erie* doctrine applies in this diversity action; thus, the Court's determinations regarding the Plaintiff's state law claims are guided by Mississippi state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998).

1001(a); and Miss. Code Ann. § 97-7-10 as the authority making this conduct illegal. At this stage in litigation, Plaintiff has satisfied the second element.

Turning to element three, Plaintiff alleges she was terminated "because she had reported illegal activity" [1]. Further allegations in her Complaint [1] support this; that is, Plaintiff was "placed on paid leave pending investigation" the same day "Defendant received its results of the state testing," and she was discharged less than a month later. Therefore, Plaintiff has plausibly pled enough material to satisfy the third element at this stage in litigation. Having satisfied all three elements, Plaintiff's *McArn* claim survives Defendant's Motion to Dismiss [6].

### *IV. Conclusion*

For the reasons set forth above, Plaintiff's claim is facially plausible and above the speculative level required to survive dismissal under Rule 12(b)(6), Rule 9(b), and their progeny. The Court therefore finds Defendant Boa Vida Hospital of Aberdeen, MS, LLC d/b/a Monroe Regional Hospital's Motion to Dismiss [6] should be denied.

An order in accordance with this opinion shall issue this day.

THIS, the 19TH day of August, 2025.

_____
SENIOR U.S. DISTRICT JUDGE